Victoria L. Nelson, Esq. (NV Bar No. 5436)
Email: vnelson@nelsonhoumand.com
Jacob L. Houmand, Esq. (NV Bar No. 12781)
Email: jhoumand@nelsonhoumand.com
Kyle J. Ortiz, Esq. (NV Bar No. 14252)
Email: kortiz@nelsonhoumand.com
NELSON & HOUMAND PC
1180 North Town Center Drive, Suite 100
Las Vegas, Nevada 89144
Telephone:    702/720-3370
Facsimile:    702/720-3371

*Electronically Filed On: August 28, 2017*

*Counsel for Shelley D. Krohn, Chapter 7 Trustee*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

In re:

BRANDON MICHAEL D'HAENENS,

Debtor.

Case No. BK-S-16-16602-BTB
Chapter 7

**MOTION TO APPROVE COMPROMISE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**

Date of Hearing:    September 28, 2017
Time of Hearing:    11:00 a.m.
Place: Courtroom No. 4, Second Floor
                    Foley Federal Building
                    300 Las Vegas Blvd., S.
                    Las Vegas, NV 89101

Judge: Honorable Bruce T. Beesley[1]

SHELLEY D. KROHN, the duly appointed Chapter 7 Trustee in the above-captioned bankruptcy case (the "Trustee"), by and through her counsel of record, Victoria L. Nelson, Esq., Jacob L. Houmand, Esq. and Kyle J. Ortiz, Esq. of the law firm of Nelson & Houmand, P.C., hereby submits this *Motion to Approve Compromise Pursuant to Federal Rule of Bankruptcy Procedure 9019* (the "Motion").

. . .

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure will be referred to as "FRCP" and the Federal Rules of Bankruptcy Procedure will be referred to as "FRBP." The Local Rules of Practice for the United States Bankruptcy Court for the District of Nevada shall be referred to as the "Local Rules".

-1-

The Motion is based on the following Memorandum of Points and Authorities, the *Declaration of Shelley D. Krohn In Support of the Motion to Approve Compromise Pursuant to Federal Rule of Bankruptcy Procedure 901* (the "Krohn Declaration"), which is filed separately and concurrently with this Court pursuant to Local Rule 9014(c)(2). The Motion is also based on the pleadings and papers on file herein, and any argument that may be entertained at the hearing on the Motion.[2]

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

The primary asset in the bankruptcy case filed by BRANDON MICHAEL D'HAENENS (the "Debtor") is a fifty percent (50%) interest in the real property located at 609 Los Feliz Street, Las Vegas, Nevada 89110 [APN 140-35-110-067] (the "Property"). The Property is equally owned by the Debtor and Severn P. Bizzaro ("Bizzaro"), the Debtor's brother. Prior to the Debtor's bankruptcy filing, Half Dental Franchise, LLC, HDM, LLC, Chayse Myers, and Matt Baker (collectively, the "Half Dental Parties") commenced an arbitration proceeding against the Debtor and Jason McKew ("McKew") with the American Arbitration Association Commercial Arbitration Tribunal (Case No. 01-14-0002-1009) (the "Arbitration Proceeding"). The Arbitration Proceeding eventually resulted in the entry of a *Modified Arbitrator's Decision and Award* (the "Arbitration Award") in favor of the Half Dental Parties and against the Debtor and McKew in the amount of $5,641,223 (the "Arbitration Award"), which was later confirmed by the Eighth Judicial District Court pursuant to Nevada Revised Statute ("N.R.S.") § 38.239.

The Half Dental Parties then initiated the action captioned *Half Dental Franchise, LLC v. Bizzaro* (Case No. A-15-722175-C) (the "Fraudulent Transfer Action") in the Eighth Judicial District Court seeking to recover the Property that had been transferred by the Debtor to various third parties after the entry of the Arbitration Award. Specifically, on June 23, 2015, the Debtor and Bizzaro transferred title to the Property to George Edward Doty ("Doty"), an individual. On

---

[2] The Trustee also requests that the Court take judicial notice of all pleadings filed in the above-referenced bankruptcy case, including adversary proceedings, pursuant to Federal Rule of Evidence 201, incorporated by reference by FRBP 9017.

-2-

or about June 28, 2015, Doty transferred title to the Property to Steven P. Simmons ("Simmons"), an individual.[3] After the Debtor's bankruptcy filing, the court in the Fraudulent Transfer Action entered an *Order Granting Plaintiffs' Motion for Summary Judgment and for Fees and Costs and Denying Defendants' Counter-Motion for Summary Judgment Re: Attorney's Fees* (the "MSJ Order"), which rendered judgment in favor of the Half Dental Parties on all claims for relief asserted in the Fraudulent Transfer Action, including attorneys' fees and costs. The MSJ Order further stated that the defendants in the Fraudulent Transfer abandoned the right to claim a homestead exemption.

After the commencement of the Debtor's bankruptcy case, the Trustee became the real party-in-interest concerning the Fraudulent Transfer Action and had authority to settle the same for the benefit of all of the Debtor's creditors. The Trustee has reviewed the claims asserted in the Fraudulent Transfer Action, the basis for an objection to the Debtor's homestead exemption, and the value of the Property and has determined that a settlement is in the best interests of the Debtor's creditors. For these reasons, the Trustee has entered into a settlement agreement that provides that the Debtor will pay the Trustee the sum of $62,500 in exchange for a release of any claims that the Trustee has authority to settle, including those claims asserted in the Fraudulent Transfer Action and any objection that could be raised to the Debtor's homestead exemption.

## II.    JURISDICTION AND VENUE

The Court has jurisdiction over the bankruptcy case and the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The Motion is a core proceeding under 28 U.S.C. § 157(b)(2). Pursuant to Local Rule 9014.2, if the Court determines that absent consent of the parties the Court cannot enter final orders or judgment regarding the Motion consistent with Article III of the United States Constitution, the Trustee consents to entry of final orders and judgment by this Court. Venue before this Court is appropriate under 28 U.S.C. §§ 1408 and

---

[3] On or about December 16, 2015, a Reconveyance Deed was recorded with the Clark County Recorder concerning the Property (the "Reconveyance Deed"). The Reconveyance Deed contained a number of recitals concerning the various transfers of title following the Debtor's initial purchase of the Property in 2006 and resulted in the transfer of title to the Property back to the Debtor and Bizzaro.

-3-

1409. The statutory predicate for the relief requested in the Motion is FRBP 9019.

### III.    STATEMENT OF FACTS

**THE PRE-PETITION LITIGATION AGAINST THE DEBTOR**

1.  On or about August 3, 2006, William F. Hendricks, an unmarried man, transferred title to the Property to the Debtor and Bizzaro, both as single men and joint tenants. *See* Krohn Declaration.

2.  On or about December 6, 2014, the Half Dental Parties commenced the Arbitration Proceeding. *See* Krohn Declaration.

3.  In the Arbitration Proceeding the Half Dental Parties pursued claims for breach of contract, breach of the covenant of good faith and fair dealing, tortious interference, breach of fiduciary duty/defalcation, conversion, embezzlement, unjust enrichment, civil conspiracy, and declaratory relief against the Debtor and McKew. *See* Krohn Declaration.

4.  On or about June 16, 2015, the arbitration panel in the Arbitration Proceeding entered the Arbitration Award. *See* Krohn Declaration.

5.  The Arbitration Award provided that the Half Dental Parties were entitled to damages in the amount of $5,641,223 from the Debtor and McKew. *See* Krohn Declaration.

6.  On or about June 17, 2015, the Half Dental Parties filed a *Motion to Confirm Arbitration Award and Request to Enter Judgment* in the Eighth Judicial District Court, requesting that the Arbitration Award be confirmed and that a judgment be entered against the Debtor and McKew pursuant to Nevada Revised Statute ("N.R.S.") § 38.239. *See* Krohn Declaration.

7.  On or about June 23, 2015, the Debtor and Bizzaro transferred title to the Property to Doty. *See* Krohn Declaration.

8.  On or about June 28, 2015, Doty transferred title to the Property to Steven P. Simmons. *See* Krohn Declaration.

9.  On July 27, 2015, the Half Dental Parties initiated the action captioned *Half Dental Franchise, LLC v. Bizzaro* (Case No. A-15-722175-C) (the "Fraudulent Transfer Action") in the Eighth Judicial District Court. *See* Krohn Declaration.

-4-

10. The defendants in the Fraudulent Transfer Action were Bizzaro, Doty, and the Debtor. *See* Krohn Declaration.

11. The only claims for relief asserted by the Half Dental Parties in the Fraudulent Transfer Action sought to avoid various transfers of the Property pursuant to N.R.S. §§ 112.190 and 112.180. *See* Krohn Declaration.

**THE DEBTOR'S BANKRUPTCY FILING**

12. On December 13, 2016, the Debtor filed a voluntary bankruptcy pursuant to Chapter 7 of Title 11 of the United States Code [ECF No. 1][4]. *See* Krohn Declaration.

13. On December 13, 2016, the Trustee was appointed as the Chapter 7 Trustee in the Debtor's bankruptcy case [ECF No. 2]. *See* Krohn Declaration.

14. On December 13, 2015, the Debtor filed his Schedules of Assets and Statement of Liabilities [ECF No. 1]. *See* Krohn Declaration.

15. The Debtor's Schedule A/B identified an ownership interest in the Property that Debtor valued at Two Hundred Ninety Thousand Dollars ($290,000.00). *See* Schedule A/B, p. 14 [ECF No. 1].

16. The Debtor claimed a homestead exemption in the Property in the amount of $290,000 pursuant to Nevada Revised Statute ("N.R.S.") §§ 21.090(1)(l) and 115.050. *See* Debtor's Schedule C, p. 19 [ECF No. 1].

17. Schedule D of the Debtor's bankruptcy petition does not identify any secured creditors. *See* Debtor's Schedule D, p. 21 [ECF No. 1].

18. On December 14, 2016, the Debtor filed an Amended Schedule C that claimed the full $550,000 homestead exemption in the Property pursuant to N.R.S. §§ 21.090(1)(l) and 115.050. *See* Debtor's Amended Schedule C, p. 1 [ECF No. 11].

19. On January 27, 2017, the Court in the Fraudulent Transfer Action entered the MSJ Order. *See* Krohn Declaration.

. . .

---

[4] All references to "ECF No." are to the numbers assigned to the documents filed in the case as they appear on the docket maintained by the clerk of the court.

20. The MSJ Order rendered judgment in favor of the Half Dental Parties on all claims for relief asserted in the Fraudulent Transfer Action, including attorneys' fees and costs. *See* Krohn Declaration.

21. The MSJ Order further stated that the defendants in the Fraudulent Transfer abandoned the right to claim a homestead exemption. *See* Krohn Declaration.

22. The MSJ Order excluded the Debtor as a result of his bankruptcy filing. *See* Krohn Declaration.

23. The MSJ Order is currently on appeal before the Nevada Supreme Court. *See* Krohn Declaration.

24. On February 27, 2017, the Debtor filed amended bankruptcy schedules that stated he held a fifty percent (50%) ownership interest in the Property with his brother, Severn P. Bizzaro. *See* Amended Schedules, p. 3 [ECF No. 49].

25. After her appointment, the Trustee arranged for a realtor to view the Property to determine its fair market value and an estimated sale price in the event that it was sold. *See* Krohn Declaration.

26. The realtor that inspected the Property has informed the Trustee that the Property is currently under construction and would require significant repairs in order to be marketed to a retail buyer. *See* Krohn Declaration.

27. The Trustee and the Debtor have entered into the Settlement Agreement that resolves the dispute concerning fraudulent transfer action and the dispute concerning the Debtor's exemption in the Property. A true and correct copy of the Settlement Agreement is attached to the Krohn Declaration as **Exhibit "1"**.

28. In consideration of a resolution of the dispute concerning the Fraudulent Transfer Action and the Debtor's homestead exemption, the Debtor shall pay the Trustee a lump-sum payment of $62,500 (the "Settlement Sum").[5] *See* Krohn Declaration.

---

[5] The description of the Settlement Agreement set forth herein and in the Krohn Declaration is a summary only and does not modify or otherwise affect the terms of the Settlement Agreement. To the extent of any conflict between the Settlement Agreement and the description set forth

-6-

29. The Trustee, on behalf of the Debtor's estate and any entity owned or controlled by the Trustee in her capacity as such, whether now or hereafter, hereby fully releases and discharges, to the maximum extent possible under applicable federal and state law: (a) the Debtor; (b) Bizzaro; (c) Doty; (d) Simmons; and (e) all current and past affiliated entities of the foregoing individuals, along with their respective relatives, members, managers, partners, limited partners, officers, directors, owners, employees, agents, insurers, counsel, and predecessors and successors (collectively, the "Released Parties"), from any and all potential or actual claims, causes of action, derivative claims, debts, liabilities, obligations, contracts, agreements, covenants, representations, warranties, expenses, and attorneys' fees and/or costs, which the Debtor's bankruptcy estate now has, or ever has had, against the Released Parties, whether at law or in equity, including, but not limited to, all claims that were asserted in (or could have been asserted in) the Fraudulent Transfer Action.  *See* Krohn Declaration.

30. The Debtor has agreed to release any and all claims against the Trustee.  *See* Krohn Declaration.

31. The Trustee and the Debtor have negotiated and reached the Settlement Agreement in good faith.  *See* Krohn Declaration.

32. The Trustee now files this Motion to obtain court approval of the Settlement Agreement pursuant to FRBP 9019.  *See* Krohn Declaration.

### IV.    LEGAL ARGUMENT

The Bankruptcy Court may approve a compromise or settlement between a debtor and another party pursuant to Fed. R. Bankr. P. 9019(a), which provides the following:

> Compromise.  On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

FED. R. BANKR. P. 9019(a).

---

herein, the Settlement Agreement shall control.  Capitalized terms used but not defined herein shall have the meaning set forth in the Settlement Agreement.

-7-

Compromise and settlement agreements have long been an inherent component of the bankruptcy process. The Ninth Circuit recognized that "[t]he bankruptcy court has great latitude in approving compromise agreements." *See Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988). Accordingly, in approving a settlement, the Court need not conduct an exhaustive investigation of the claims sought to be compromised. *See United States v. Alaska National Bank (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982). Rather, it is sufficient that the Court find that the settlement was negotiated in good faith and is reasonable, fair, and equitable. *See Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied*, 479 U.S. 854 (1986). The proponent of the settlement must also persuade the court that the settlement is in the best interests of the estate. *See Goodwin v. Mickey Thompson Entertainment Group. (In re Mickey Thompson Entertainment Group, Inc.)*, 292 B.R. 415, 420–21 (B.A.P. 9th Cir. 2003). It is within the sound discretion of the bankruptcy court whether to accept or reject a compromise. *See In re Carson,* 82 B.R. 847 (Bankr. S.D. Ohio 1987).

The Ninth Circuit has identified the following factors for consideration in determining whether a settlement is reasonable, fair, and equitable:

> (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*In re A & C Properties*, 784 F.2d at 1381. The moving party is not required to satisfy each of these factors as long as the factors as a whole favor approving the settlement. *See In re Pacific Gas & Electric Co.*, 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004). In considering the factors, "a precise determination of the likely outcome is not required, since an exact judicial determination of the values at issue would defeat the purpose of compromising the claim." *In re Telesphere Comm's, Inc.*, 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (internal quotations omitted). Thus, rather than determining various issues of fact and law, the Court should "canvass the issues and

see whether the settlement fall[s] below the lowest point in the range of reasonableness." *In re Lion Capital Group*, 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985) (internal quotations omitted).

**B.    The Settlement Agreement Is Fair and Equitable**

    1.    <u>The Probability of Success in the Litigation</u>

Upon the filing of a bankruptcy case, the bankruptcy trustee becomes the real party-in-interest in any fraudulent transfer actions that were commenced pre-petition. *See Mortgage America, Corp.*, 714 F.2d 1266 (5th Cir. 1983) (holding that a fraudulent transfer action under Texas law is property of a debtor's bankruptcy estate that can only be prosecuted by the Chapter 7 Trustee); *see also In re Zwirn*, 362 B.R. 536 (Bankr. S.D. FL. 2007) (holding that a Chapter 7 Trustee could settle a fraudulent transfer action commenced by a creditor pre-petition as the real party-in-interest over the objection of the creditor that had originally commenced the fraudulent transfer action);

The Trustee believes that she will be successful if she decided to pursue the Fraudulent Transfer Action or file an objection to the Debtor's homestead exemption. That said, the Trustee recognizes that the outcome of any litigation is never certain, and there is a possibility that the MSJ Order may be reversed, thereby preventing the Trustee from utilizing it to file an objection to the Debtor's homestead exemption. Given this uncertainty, this factor weighs in favor of approval of the Settlement Agreement.

    2.    <u>The Difficulties in Matter of Collection</u>

After her appointment, the Trustee arranged for an experienced real estate agent to review the Property to determine its fair market valuation. The realtor has informed the Trustee that the Property is currently under construction and could not be marketed to a retail buyer through the multiple listing service. Due to the significant repairs that the Property requires, any buyer for the Property would have to offer all cash as the Property would not likely pass an inspection or qualify for a conventional mortgage. As result, even if the Trustee is successful in pursuing the Fraudulent Transfer Action and a related objection to the Debtor's exemption, it is possible that she would not be able to liquidate the Property for the benefit of the Debtor's creditors.

. . .

-9-

3. <u>The Complexity of the Litigation Involved and the Expense, Inconvenience and Delay</u>

The dispute that is the basis of the Fraudulent Transfer Action does not involve nuanced legal theories, but is factually intensive. Moreover, the MSJ Order did not include the Debtor due to his bankruptcy filing and, therefore, would require the resolution of the dispute before the Nevada Supreme Court before the Trustee could seek to incorporate the Debtor. In addition, there is a possibility that the Trustee would have to seek to partition the Property pursuant to Section 363(h) if the MSJ Order is affirmed on appeal because the Property is co-owned by the Debtor and Bizzaro. Accordingly, this factor weighs in favor of the approval of the Settlement Agreement pursuant to FRBP 9019 because litigation of the Fraudulent Transfer Action and any related objection to the Debtor's homestead exemption before this Court would involve significant administrative expenses that would only reduce any distribution to the Debtor's creditors.

4. <u>The Paramount Interest of the Creditors</u>

The Settlement Agreement is in the best interests of creditors because it will result in the recovery of $62,500 that will be available to pay proofs of claim that have been filed in the Debtor's bankruptcy case. Since there are no assets in the Debtor's bankruptcy case currently available to pay creditors, approval of the Settlement Agreement will result in the recovery of funds that will allow for a dividend to be paid to creditors.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

-10-

## V. CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court enter an order (i) approving the Settlement Agreement attached as **Exhibit "1"** to the Krohn Declaration pursuant to FRBP 9019 and (ii) for such other and further relief as is just and proper.

Dated this 28th day of August, 2017.

**NELSON & HOUMAND PC**

By: */s/ Jacob L. Houmand*
Victoria L. Nelson, Esq. (NV Bar No. 5436)
Jacob L. Houmand, Esq. (NV Bar No. 12781)
Kyle J. Ortiz, Esq. (NV Bar No. 14252)
1180 North Town Center Drive, Suite 100
Las Vegas, Nevada 89144
Telephone:   702/720-3370
Facsimile:   702/720-3371

*Counsel for Shelley D. Krohn, Chapter 7 Trustee*